Betts *et al. v.* The State.

Filed Jan. 30, 1884.

———————◆———————

No. 11,439.

BETTS ET AL. *v.* THE STATE.

CRIMINAL LAW.—*House of Ill-Fame.*—*Indictment.*—An indictment for violation of section 1994, R. S. 1881, is sufficient if it follow the terms of the statute.

SAME.—*Reputation.*—*Evidence.*—Evidence of reputation as to the character of the house is admissible for the prosecution upon the trial of an indictment for keeping a house of ill-fame, and proof of particular acts of lewdness in the house is not absolutely necessary to establish guilt.

From the Elkhart Circuit Court.

*H. C. Dodge,* for appellants.

*F. T. Hord,* Attorney General, *F. D. Merritt* and *J. M. Vanfleet,* for the State.

NIBLACK, J.—Indictment by the grand jury of Elkhart county against Thomas Betts and Emma Betts, under section 1994, R. S. 1881, for keeping a house of ill-fame. Motion to quash the indictment was overruled. Trial by jury. Verdict finding the defendants guilty and fixing their punishment at a fine of $100 and imprisonment in the county jail for the period of six months. New trial denied and judgment on the verdict.

The indictment charged " that, at said county, on the 1st day of April, 1883, and continuously from thence to the making of this presentment, Thomas Betts and Emma Betts did, then and there, unlawfully keep a house of ill-fame, which was then and there, and during all of said time, unlawfully resorted to for the purpose of prostitution and lewdness by Maud Livingston, Frank Husk, Sylvester Smith and other persons, male and female, of bad reputations for chastity and virtue, whose names are to this grand jury unknown."

So much of section 1994 as is applicable to the offence plainly intended to be charged in this case may be thus stated :

" Whoever keeps a house of ill-fame, resorted to for the purpose of prostitution and lewdness; * * * * * shall be fined not more than one hundred dollars nor less than ten dollars, to which may be added imprisonment in the county jail not exceeding six months."

It is conceded that the indictment in this case substantially follows the statute, but it is claimed that the phrase " house of ill-fame " has no legally defined meaning, and that hence, in a case of this character, it is not sufficient to merely follow the statute in the description of the offence.

Bouvier, in his Law Dictionary, defines a "bawdy house " as being "A house of ill-fame, kept for the resort and unlawful commerce of lewd people of both sexes," and other law dictionaries and law writers give substantially the same definition. Accepting this definition as sufficient, it has been held, and we have no doubt correctly, that the terms " bawdy house " and " house of ill-fame " are synonymous. *State* v.

*Boardman,* 64 Maine, 523. Webster's Dictionary, in giving the meaning of "bawdy house," treats the term "house of ill-fame" as its synonym. A "house of ill-fame" may therefore be said to be a "bawdy house kept for the resort and unlawful commerce of lewd people of both sexes." The words "house of ill-fame" has consequently a well defined legal as well as generally accepted meaning. We see no objection to the sufficiency of the indictment.

At the trial one Miller was examined as a witness for the State. He stated that he had been acquainted with the defendants since about the first of April, 1882; also with the house in which they had lived, as well as the reputation of that house during that period. Over the objection of the defendants, he was permitted to further state that "the general reputation of that house was that it was a house of ill-fame, a house of prostitution," and complaint is made that this evidence ought to have been excluded.

The authorities are not entirely in accord upon the admissibility of such evidence in a case like this, but we think the decided weight of authority is in favor of its admissibility.

Moore's Criminal Law states the rule to be that "A house of ill-fame may be proved to be such by direct evidence; or, by reputation; or, by circumstances, as that the inmates were reputed to be prostitutes; or, that prostitutes and libertines frequented it; or, that lewdness took place therein," and numerous authorities are cited in support of these several propositions. See Moore Crim. L., section 1072, and notes.

*State* v. *Brunell,* 29 Wis. 435, one of the cases cited by Moore, holds that in a prosecution for keeping a house of ill-fame, the State must first prove that the person charged kept the house in question; that the general reputation of the house, and of its frequenters and the defendant, may then be shown, and if these satisfy the jury that the house was kept and resorted to for the purposes of prostitution and lewdness, they may so find without proof of particular acts of prostitution or lewdness occurring in the house. But that proof

that the house was reputed to be a house of ill-fame, or that its frequenters and the defendant were persons of bad character for chastity and virtue, is not conclusive of the defendant's guilt. Such facts constitute only circumstances proper to be considered by the jury.

That case impresses us as one that may be safely followed in this State, and fully sustains the admissibility of the evidence of Miller, objected to as above.

Complaint is further made that the verdict was not sustained by sufficient evidence, as no acts of prostitution or of lewdness in the house were proven, and as many of the persons, both male and female, seen visiting the house were strangers. But there were, nevertheless, many circumstances, proven at the trial, strongly tending to support the verdict. Other witnesses also testified to the bad reputation of the house, as well as of the defendants, and some of those who frequented the house; also to conversations with the defendants, amounting very nearly, if not quite, to admissions of their guilt.

Other objections were noted at the trial, but they were not carried into the motion for a new trial.

The judgment is affirmed, with costs.

Filed Jan. 31, 1884.