JOHNNIE MARIE SUMPTER *v.* STATE OF INDIANA.

[No. 1273S261. Filed January 22, 1974]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

HUNTER, J.—The State of Indiana has petitioned this Court for transfer of the above cause. Defendant was convicted at trial for living in a house of ill fame. IC 1971, 35-30-1-1; Ind. Ann. Stat. § 10-4220 (1972 Supp.) The Court of Appeals reversed, holding that the prosecution failed to prove that the defendant was a female—a required element of the crime charged. 296 N. E. 2d 131.

We believe the Court of Appeals correctly applied existing law when it reversed the trial court. However, we also believe that the existing law is in need of modification. Therefore, we have granted transfer. Several other issues presented to the Court of Appeals will also be considered herein.

I. It is axiomatic in the criminal law that the State must prove each and every element of the offense charged beyond a reasonable doubt. In the case at bar, the most fundamental element, i.e., that the accused be a female, was not affirmatively proved by the State. That is to say, the State failed to adduce any evidence specifically intended to establish the sex of the defendant. The record is replete with references by the State, the defense, and witnesses to the accused as "she" and "her." However, no testimony or documentary evidence appears on the record

which definitively establishes the defendant's sex. The State, according to our existing law, failed in its burden of proving the accused's sex beyond a reasonable doubt.

The burden of proving the sex of the defendant is rightly upon the shoulders of the State. However, we believe the method and sequence of proof is in need of revision.

The sex of a human being is generally its most obvious characteristic. We can look at another human being and, with a very high degree of certainty, ascertain his or her sex. Therefore, why couldn't a presiding judge take judicial notice of a defendant's sex? We believe he can and should.

We prescribe the following procedure with the conviction that such is wholly consistent with practical reality and common sense.

When an individual is charged with an offense, an element of which is the sex of the accused, the trial court will take judicial notice of the defendant's sex. However, the judge's finding is not necessarily conclusive of the issue. Once the judge takes judicial notice of such fact, a rebuttable presumption arises in favor of the State. This is not to say that the burden of persuasion shifts from the State to the defendant. That burden never shifts. However, this procedure imposes a burden upon the defendant of producing evidence.

This Court has succinctly stated the legal significance and nature of a presumption:

". . . a presumption of law is not evidence nor should it be weighed by the factfinder as though it had evidentiary value. Rather, a presumption is a rule of law enabling the party in whose favor it operates to take his case to the jury without presenting evidence of the fact presumed. It serves as a challenge for proof and indicates the party from whom such proof must be forthcoming. When the opponent of the presumption has met the burden of production thus imposed, however, the office of the presumption has been performed; the presumption is of no further effect and drops from the case." *Young* v. *State* (1972), 258

Ind. 246, 280 N. E. 2d 595, quoting *Commonwealth* v. *Vogel* (1970), 440 Pa. 1, 17, 268 A. 2d 89, 102.

The above represents the procedure which we herein prescribe. In order to conserve precious judicial time, a rebuttable presumption of the defendant's sex arises once the judge takes judicial notice of such fact. This presumption is sufficient to constitute a *prima facie* case in favor of the State when the defendant fails to produce any competent evidence to the contrary. However, once the defendant challenges the presumption by introducing competent evidence, the presumption passes forever from the case. The State, then by affirmative evidence, must establish the defendant's sex beyond a reasonable doubt.

For this Court to reverse the judgment of the trial court and discharge the appellant on a technicality is to indulge in the kind of judicial antics which so exasperate the taxpaying public and promotes public dissatisfaction with the judicial system.

II. The petitioner contends that her motion to quash should have been sustained due to the fatally defective nature of the charging affidavit. Her specific allegations are that the statute under which the prosecution was brought is unconstitutional in that it punishes for a "status," and not for any overt criminal act or "crime"; that the statute is unconstitutionally vague; that the statute is violative of the Equal Protection Clause; that the statute is violative of the First Amendment. Furthermore, she argues that Count I (charging her with *living* in a house of ill fame) should be quashed because it is repugnant to Count II (charging her with *frequenting* the same place); that the affidavit did not specify the period of time of the alleged offense. The statute in question reads as follows:

> "*Prostitute.*—Any female who frequents or lives in a house or houses of ill fame, knowing the same to be a house of ill fame, or who commits or offers to commit one [1] or more acts of sexual intercourse or sodomy for hire, shall be deemed guilty of prostitution, and on conviction thereof

shall either be fined not less than one hundred dollars [$100] nor more than five hundred dollars [$500]; and imprisonment not to exceed 180 days or such person may be imprisoned in the Indiana women's prison not less than two [2] years nor more than five [5] years. [Acts 1965, ch. 345, § 1, p. 1025; 1967, ch. 23, § 1, p. 28.]" IC 1971, 35-30-1-1; (Ind. Ann. Stat. § 10-4220 [1956 Repl.]).

Appellant argues that the statutes imposes punishment for a "status" rather than for overt criminal conduct. The fact of the matter is that the legislature has determined that living in a house of ill fame is a criminal offense. The legislature is empowered to proscribe conduct within the State of Indiana which it deems to be criminal. (Art. 4, § 22, Indiana Constitution.) The case upon which appellant relies, *Robinson* v. *California* (1962), 370 U.S. 660, 8 L. Ed. 2d 758, can easily be distinguished from the case at bar. In *Robinson* a state statute which made drug *addiction* a criminal offense was held to be violative of the Eighth and Fourteenth Amendments (cruel and unusual punishment). As applied, the statute made criminal the status of drug addiction irrespective of non-use of drugs within the state. The court concluded, in essence, that no criminal act had occurred in the state. In this case, the Indiana statute in question proscribes criminal activity *within the state*. Unlike *Robinson,* there exists a nexus between the criminal act and the state.

Appellant further contends that the statute is unconstitutionally vague and, hence, offends the Due Process Clause of the Fourteenth Amendment. Penal statutes, in order to satisfy due process requirements, must be sufficiently explicit so as to adequately inform individuals of ordinary intelligence of the consequences of their contemplated conduct. *Bowie* v. *Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894. *Stanley* v. *State* (1969), 252 Ind. 37, 245 N. E. 2d 149. Appellant argues that the use of the term "house of ill fame" is too imprecise to adequately inform individuals that their conduct is proscribed by law. We categorically reject this assertion. We

believe that an individual of ordinary intelligence fully knows and appreciates the meaning of "house of ill fame." Appellant speculates that perhaps a massage parlor or bookmaking operation could be considered a "house of ill fame." We believe they could be—but only if prostitution, as proscribed by the statute, were practiced therein.

Appellant urges us to declare the statute unconstitutional on grounds that its application to *women* and not to *men* violates the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause does not prevent a state from indulging in reasonable legislative classifications. *State ex rel. Miller* v. *McDonald* (1973), 260 Ind. 565, 297 N. E. 2d 826. In the usual case, establishing a rational basis for the classification will be sufficient to sustain its constitutionality. *Miller, supra.* There are instances in which the rational basis test will be inadequate and a higher standard of judicial scrutiny is required. This higher standard of scrutiny is only triggered when "suspect" classes or fundamental rights are involved. We know of no fundamental right to be a prostitute or to be free from prosecution for acts of prostitution. Nor, has a majority of the United States Supreme Court held that sex is a "suspect" class. Therefore, the prostitution statute will withstand constitutional muster upon a showing of reasonableness. That is to say, if *"any* state of facts rationally justifying it is demonstrated or perceived by the courts," the statute must stand. *United States* v. *Maryland Savings-Share Ins. Corp.* (1970), 400 U.S. 4, 27 L. Ed. 2d 4.

The Indiana legislature has made a policy decision that prostitution is a significant social problem only among females. Such a decision is clearly reasonable and, therefore, should be sustained.

Appellant argues that the prostitution statute violates the federal and state constitutional prohibitions against establishment of religion and constitutional guarantees of religious

liberty, by giving Judaeo-Christian ethics the force of criminal law. We find this contention to be utterly frivolous. Virtually all criminal laws are in one way or another the progeny of Judaeo-Christian ethics. We have no intention to overrule the Ten Commandments.

Appellant contends that Count I of the affidavit should have been quashed because it was inconsistent with, and repugnant to, Count II of the affidavit. Count I charged appellant with *living* in a house of ill fame, while Count II charged appellant with *frequenting* a house of ill fame. We concede that these counts are clearly inconsistent with one another. However, we are unable to discern any prejudice visited upon the appellant as a result of that inconsistent pleading. In fact, appellant fails to direct us to *any* prejudicial effect whatsoever. The conviction was obtained only on Count II, and the record discloses an abundance of evidence to support that conviction. After the jury returned a guilty verdict on Count I, the state moved for and was granted a directed verdict of not guilty on Count II. A logical inconsistency in an indictment, which does not result in actual harm to the appellant, i.e., conviction on *both* counts, cannot rise to the status of reversible error.

Appellant alleges that the affidavit was defective in that neither count specifies the *period of time* in which she allegedly lived in or frequented the house of ill fame. Count I charged appellant with living in a house of ill fame on July 15, 1971. Appellant informs us that "the motion to quash correctly anticipated a problem which did, in fact, arise on trial." Appellant, at trial, objected to the introduction of evidence of her commission of the crime over a two-year period. Appellant takes the position that one is unable to prepare an adequate defense when the affidavit alleges the commission of an offense on one day and, at trial, evidence is admitted of criminal acts spanning a two-year period. This allegation is without merit for two reasons. First, there was substantial evidence adduced at

trial that the appellant was in fact the resident proprietress of the house of ill fame on July 15, 1971. Secondly, there is a long-standing rule of evidence in Indiana which allows the admissibility of evidence showing the commission of a continuous offense at times prior to the time charged in the affidavit. *Townsend* v. *State* (1897), 147 Ind. 624, 47 N. E. 19. Obviously, residence in a house of ill fame is generally, by its very nature, a continuing phenomenon.

III. Appellant contends that her motion to dismiss should have been sustained on two grounds. First, she argues that a prior affidavit charging prostitution was still pending when the present affidavit was filed. The affidavit upon which appellant was convicted was filed on September 30, 1971, the *same* day the prior charge was dismissed. Appellant takes the position that the prior charge was not officially dismissed until the judge signed the order book at the end of the day. Therefore, she argues, that the prior charge was pending when the present affidavit was filed. Upon facts similar to those in the case at bar, we have *presumed* that a prior indictment was dismissed before the new charges were filed. *Alstott* v. *State* (1933), 205 Ind. 92, 185 N. E. 896. In *Alstott,* an indictment was dismissed and an affidavit filed on the same day. *Alstott* is a much more extreme case than the case at bar in that the Court had to rely on the operation of a presumption. Here, we need not resort to such a presumption. The record clearly indicates that the dismissal of the prior affidavit *preceded* the filing of the present affidavit upon which appellant was convicted. To adopt appellant's ingenious logic is to honor form over substance. We hold, therefore, that for all intents and purposes, there was no charge pending when the present affidavit was filed.

Additionally, appellant claims that the State brought "successive vexatious prosecutions," resulting in a denial of due process. Appellant cites no authority for such a proposition other than cases involving *successive trials*. The appellant in this case was placed in jeopardy but one time. Double

jeopardy clearly is inapplicable. Furthermore, it is important to note that the affidavit issued prior to the present affidavit was dismissed upon the motion of appellant.

IV. Appellant next alleges that her special plea should not have been overruled and denied, because the prostitution statute is unconstitutional and that the *jury* should have been permitted to consider and determine said plea. To begin with, we have held that the statute is constitutional. Therefore, the trial court did not err in overruling the special plea, which attacked the statute's constitutionality. Furthermore, the constitutionality of a statute is not a matter for the jury. The only matter for the jury's consideration in this case was whether the appellant-defendant was guilty of prostitution.

V. Appellant contends that the trial court improperly admitted evidence with a tendency to prove *another* offense and hearsay evidence of reputation.

Evidence that the utilities and telephone in the house in question were in appellant's name was introduced over the appellant's objection. It is appellant's position that said evidence goes to proving a separate offense—namely keeping a house of ill fame—(see IC 1971, 35-1-83-2, (Ind. Ann. Stat. § 10-4217)) and that said evidence is hightly prejudicial and inadmissible. As authority, appellant cites *Layton* v. *State* (1966), 248 Ind. 52, 221 N. E. 2d 881, for the proposition that one crime cannot be proved in order to establish another distinct crime. With this proposition we fully agree. However, the rule in *Layton* v. *State* contemplates a far different situation than in the case at bar. *Layton* is concerned with the admission of evidence of separate and distinct crimes—ones which must be established by independent evidence. In other words, both offenses stand on different evidentiary bases and require different proof. The principle enunciated in *Layton* is designed to combat the introduction of other offenses to prove the offense in question. ("He

burglarized a house a week before; therefore, he must be guilty of burglary in this case.") In *this* case, evidence of the utilities in the appellant's name goes to prove *both*—keeping of and living in a house of ill fame. The mere fact that the evidence goes to prove an offense other than the one charged is immaterial, so long as that evidence has a tendency to prove or disprove the charged offense.

Appellant contends that the trial court erred in admitting evidence of the defendant's reputation and the reputation of the house in question. The appellant's position, with which we concur, is that the admission of such rank hearsay to prove that the house in question was *in fact* a house of ill fame, and that appellant was *in fact* a prostitute, violated appellant's right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution.

The right to confrontation has been held to be a two-pronged right. It contemplates both the right to cross-examine witnesses and the right to have the trier of fact assess the demeanor of those witnesses. *Barber* v. *Page* (1968), 390 U.S. 719. However, the right to confrontation, like most constitutional guarantees, is not *absolute*. In fact, there are a multitude of United States Supreme Court cases which have held that the major hearsay exceptions do not offend the Confrontation Clause. Established hearsay exceptions have become, in large measure, exceptions to the Confrontation Clause itself. McCormick states the relationship between the hearsay rule and the Confrontation Clause as follows:

"The similarity to the underpinnings of the hearsay rule is evident. In the late 1700's when confrontation provisions were first included in American bills of rights, the general rule against hearsay had been accepted in England for a hundred years, but it was equally well established that hearsay under certain circumstances might be admitted. *A fair appraisal may be that the purpose of the American provisions was to guarantee the maintenance in criminal cases of the hard-won principle of the hearsay rule, without*

*abandoning the accepted exceptions which had not been questioned as to fairness, but forbidding especially the practice of using depositions taken in the absence of the accused.* This last had been much complained of, and was later abandoned by the English judges and forbidden by statute. While the Clause, as it appears in the Sixth Amendment, in terms makes no provision for exceptions, in fact it has not so been construed. That departures may be allowable does not, of course, mean that they coincide completely with those of the hearsay rule, a conclusion that becomes more evident when the hearsay aspect is measured by State rules of evidence and the constitutional confrontation standard is federal. In fact the Supreme Court on more than one occasion has expressly rejected the idea that the hearsay rule and the right of confrontation are simply different ways of stating the same thing. *Nevertheless, instances in which an item of evidence admissible under traditional hearsay concepts has been held to violate the confrontation right are rare.* On the other hand, the clause has not stood as a solid barrier to liberalization of the admissibility of hearsay." *McCormick on Evidence,* § 252, p. 606-607 (2nd ed.) (Our emphasis.)

In order for hearsay exceptions not to offend the Confrontation Clause of the United States and Indiana Constitutions, the hearsay evidence must possess a substantial "indicia of 'reliability' " (*California* v. *Green* (1970), 399 U.S. 149, 26 L. Ed. 489.

Two old Indiana cases recognize reputation as an exception to the hearsay rule. *Betts, et al.* v. *State* (1883), 93 Ind. 375; *Schultz* v. *State* (1928), 200 Ind. 1, 161 N. E. 5. However, we do not believe such an exception can pass constitutional muster in light of the above discussion. We can conceive of no evidence more inherently suspect than reputation evidence based on the statements of out-of-court declarants. There simply is no "indicia of reliability"—in fact, if anything, there is an indicia of *unreliability*. There are no built-in safeguards as in the case of former, sworn testimony or admissions of a party-opponent. We, therefore, can see no justification for such an exception if we are to maintain the integrity of an accused's rights to confrontation. We do not hold that reputation evidence is in

all instances inadmissible. Such evidence is admissible for impeachment purposes or when the character of a party is in issue. We only hold that evidence of reputation introduced as substantive evidence of guilt is inadmissible. In the case at bar the evidence of reputation was introduced to establish guilt and consequently was erroneously admitted by the trial court. However, such error does not constitute *reversible* error in this case. We are convinced that there was abundant independent evidence establishing the existence of a house of ill fame and the appellant's residence therein. The record discloses the following evidence most favorable to the State:

(1) On the day of her arrest, appellant owned the property upon which the house in question rests;

(2) The utilities were in her name;

(3) Appellant admitted that the belongings in a large first-floor bedroom were hers;

(4) There was direct testimony that the witnesses had had sexual relations in the house with prostitutes on numerous occasions, and on each one of these occasions, the appellant answered the door and let them in.

For all the foregoing reasons, the judgment of the trial court is hereby affirmed in part, and we also remand this cause to the trial court for determination of the defendant's sex pursuant to the procedures set out herein. The trial court should take any and all appropriate remedial action to correct the trial record, findings and judgment.

Arterburn, C.J., concurs; Givan, J., concurs in the opinion but disagrees with the procedural remand; Prentice, J., concurs in the granting of transfer and affirmance of the trial court's judgment only, with opinion; DeBruler, J., dissents with opinion.

OPINION CONCURRING IN PART—DISSENTING IN PART

PRENTICE, J.—I concur in the opinion of the majority except insofar as it announces a concept of a rebuttable presumption

arising from the trial judge taking judicial notice. This approach would leave the litigants in a quandary as to if and when such notice has been taken and as to where the "burden of producing evidence" lies. Assuming that sex is a legitimate basis for legislative classification with respect to the commercialization of sexual activity (a proposition which I accept only with considerable difficulty) in the absence of a special plea or the presentation of some evidence that the defendant's sex is other than that alleged in the affidavit or indictment, it is absurd, to me, to require the State to offer evidence upon the issue. I liken it to the condition of sanity, without which there can be no intent to commit a crime requiring mens rea. Upon a charge of such a crime, the State is not required to prove the defendant's sanity, unless the defendant places the matter in issue. I would treat the matter of proof of sex in such cases in the same manner.

I would grant transfer and affirm the judgment of the trial court.

### DISSENTING OPINION

DEBRULER, J.—I find that I must dissent from the majority in this case since I cannot agree with its construction of a presumption in all crimes where an element of the offense is the sex of the defendant, and because I believe this statute violates both the Due Process and Equal Protection Clauses of the Constitution.

In its opinion the majority identifies the "most fundamental element" of this crime as the sex of the defendant and then proceeds to relieve the State from proof of this element by creating a judicial presumption. In criminal cases a court should be extremely reluctant to create a presumption which has the effect of carrying the State's case to the jury. The Legislature has included as one of the elements of the crime defined at IC 1971, 35-30-1-1, being Burns § 10-4220, that the defendant be a female. A presumption that in effect abrogates the State's responsibility to prove this element of the crime is contrary to one of the basic principles of our legal

system; namely, that the State be required to prove every element of a crime as defined by the Legislature.

Moreover there is no overriding necessity to create a presumption of femininity here. It is a simple matter for the State to carry its burden of proving the sex of the defendant by introducing affirmative evidence on the point in the same manner in which other elements of the crime are established. In *Howard* v. *State* (1971), 257 Ind. 166, 272 N. E. 2d 870, this Court accepted as sufficient the direct testimony of a non-expert lay witness as to her opinion of the defendant's sex when that was an element of the crime charged. It is highly unlikely that the State should have any more difficulty today identifying the sex of a person than it did at the time of the *Howard* decision. The accused has been observed and arrested by police officers, transported around, often subjected to search of quarters and person, taken to jail and subjected to an inventory of personal belongings and required to don prison garb. It is inevitable that some official in these channels (and therefore readily available as a witness to the State at trial) will have made sufficient observation of the accused to render admissible his or her opinion as to the sex of the accused. Evidence of sex which would be sufficient to warrant a finding of guilt beyond a reasonable doubt is therefore readily, cheaply and obviously available to the State. I cannot conceive of any legitimate reasons why we should treat this particular element of the crime differently than any of the other legislatively specified elements required to be established in the record by affirmative evidence.

I also agree with appellant that this statute, which punishes a female for living or frequenting a house of ill fame, violates the Due Process Clause. It is a fundamental element of due process that criminal statutes enacted by the Legislature must clearly define the behavior to be prohibited[1] and cannot be so

---

1. The problem of vagueness in the term "house of ill fame" is emphasized by the majority's treatment of this issue. In response to appellant's contention that "house of ill fame" is imprecise and may

broadly defined as to include citizens who are not engaging in activities inimicable to the health, safety, morals or welfare of the State. *Lanzetta* v. *New Jersey* (1938), 306 U.S. 451, 59 S. Ct. 618, 83 L. Ed. 888; *Kirtley* v. *State* (1949), 227 Ind. 175, 84 N. E. 2d 712. While the Legislature may be assumed to have the power to regulate commericalized sexual conduct it cannot do so in a manner which is overly broad or ill defined. That part of the statute with which we are concerned here subjects a defendant to a five year prison term for nothing more than residing in a certain building. No act other than the status of living in a certain location is required. Moreover, our Legislature has enacted numerous laws which prohibit specific acts of commercialized sexual conduct and which encompass perhaps every conceivable act which may be deemed within the purview of the problem. The remainder of Burns § 10-4220, punishes the acts of committing or offering to commit acts of sexual intercourse or sodomy for hire. In addition this State has statutes which make it a crime to operate or manage a house of prostitution (IC 1971, 35-1-83-2, being Burns § 10-4217), to induce a female to become a prostitute (IC 1971, 35-1-87-1, being Burns § 10-4218), or to share the earnings of a prostitute (IC 1971, 35-30-6-1, being Burns § 10-4226). There is no need for the State to make the status of living in a house of ill fame a crime when it has readily available these alternative and more precise laws which are designed to punish specific acts.

The United States Supreme Court in a unanimous opinion in the case of *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110, considered a city ordinance which declared one who, among other pursuits,

---

include such places as massage parlors or bookmaking operations the majority states that these places may be within the meaning of the phrase, "but only if prostitution, as described by the statute, were practiced therein", thus clearly implying that the term "house of ill fame" is restricted to places where prostitution takes place. However, in the case of *State* v. *Griffin* (1948), 226 Ind. 279, 79 N.E.2d 537, this Court specifically held that the term "house of ill fame" includes not only houses of prostitution but additionally bawdy houses and gaming houses.

habitually spent his time "frequenting houses of ill fame" to be a vagrant and subjected him to ninety days in jail. The court found that such an ordinance was vague, overbroad and made activities criminal which were not harmful to society in themselves. I believe that portion of Burns § 10-4220 under consideration here is analoguous to the ordinance found in *Papachristou.*

Lastly, I believe the majority's treatment of appellant's equal protection claim is also erroneous. In its opinion the majority upholds this statute's limitation of criminality only to females who frequent houses of ill fame by conjecturing that the Legislature must have made a policy decision, "that prostitution is a significant social problem only among females". Actually a companion statute found at IC 1971, 35-1-87-2, being Burns § 10-4219, makes it a crime for a male person to frequent or visit a house of ill fame. Obviously the majority's assumption that the Legislature has decided this behavior is only of significant social importance when committed by females is erroneous since the same behavior is made criminal in another statute when undertaken by males.

In my view, however, this does not end the problem raised by the statutes in terms of the Equal Protection Clause since Burns § 10-4219 subjects a male who frequents a house of ill fame to a misdemeanor sentence of sixty days in jail, while Burns § 10-4220 punishes the same crime when committed by a female as a felony with a prison sentence of two to five years.

I agree with the majority that the United States Supreme Court has not as yet found that legislation which creates classes purely on the status of sex to be suspect and hence subject to strict judicial scrutiny. *Reed* v. *Reed* (1971), 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225.[2] This does not

---

2. However, in *Frontiero v. Richardson* (1973), 93 S.Ct. 1764, four justices found that classifications based on sex were impliedly held to be suspect by the decision in *Reed v. Reed* (1971), 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225.

mean, however, that classifications of a non-suspect nature are not required to meet any standard of reasonableness at all. In finding that a State statute which gave preference in administering estates to male survivors over female survivors was unconstitutional the court again reiterated that:

> "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of legislation, so that all persons similarly circumstanced shall be treated alike.' " 404 U.S. at 76.

These statutes clearly provide dissimilar treatment for men and women similarly situated. Surely subjecting one class of citizens to a punishment over thirty times as harsh as another class committing the same crime simply on the basis of the defendant's sex cannot withstand even the slightest gaze by the Equal Protection Clause. This is the very kind of arbitrary, unreasonable and capricious legislation forbidden by the Constitution.

In *Morgan* v. *State* (1913), 179 Ind. 300, 101 N. E. 6, this Court found a statute which provided that males were automatically committed to an institution for the criminally insane when they were found not guilty of a violent crime by reason of insanity, while females similarly acquitted were afforded a commitment hearing, to be a classification repugnant to the Equal Protection Clause. I believe that Morgan is *stare decisis* in this State for the proposition that differentiation in the disposition or sentencing of those found in need of commitment or incarceration cannot be made purely on the basis of sex. See also *Commonwealth* v. *Daniel* (1968), 430 Pa. 642, 243 A. 2d 400 ; *Lamb* v. *Brown,* 456 F. 2d 18 (10th Cir., 1972) ; *U.S. ex rel. Robinson* v. *York,* 281 F. Supp. 8 (D. Conn., 1968). For these reasons I respectfully dissent from the opinion of the majority.

NOTE.—Reported in 306 N. E. 2d 95.