Michael BRADY, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S03–9106–CR–498.

Supreme Court of Indiana.

June 28, 1991.

982

Anthony V. Luber, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PETITION FOR TRANSFER

DeBRULER, Justice.

Following a jury trial, appellant Michael Brady was convicted of child molesting, a Class C felony, I.C. 35–42–4–3(b), and received a sentence of seven years. A divided Court of Appeals affirmed appellant's conviction and corresponding sentence. *Brady v. State* (1989), Ind.App., 540 N.E.2d 59 (Hoffman, J., dissenting).

Appellant now brings this petition to transfer. We now grant transfer and reverse. The points raised in appellant's petition include the contention that I.C. 35–37–4–8,[1] which authorizes the use of video-taped testimony of child witnesses at trial is unconstitutional. Appellant also asserts that the videotaped testimony should not have been admitted into evidence because appellant's right to cross-examine the witness was compromised. In addition to considering these particular points, we further find it necessary to consider appellant's claim that the evidence presented at trial was insufficient to support his conviction and that the verdict was therefore contrary to law.

T.B. was born on June 22, 1982. Appellant is her natural father. Appellant and T.B.'s mother, Carla Myers, were married at the time of her birth but were subse-

1. At the time of appellant's trial, I.C. 35–37–4–8 read as follows:

Sec. 8. (a) This section applies to criminal actions for felonies under I.C. 35–42 and for neglect of a dependent (I.C. 35–46–1–4) and for attempts of those felonies (I.C. 35–41–5–1).

(b) On the motion of the prosecuting attorney, the court may order that:

(1) the testimony of a child be taken in a room other than the courtroom and be transmitted to the courtroom by closed circuit television; and

(2) the questioning of the child by the prosecution and the defense be transmitted to the child by closed circuit television.

(c) On the motion of the prosecuting attorney, the court may order that the testimony of a child be videotaped for use at trial.

(d) The court may not make an order under subsection (b) or (c) unless:

(1) the testimony to be taken is the testimony of a child who:

(A) is less than ten (10) years of age;

(B) is the alleged victim of an offense listed in subsection (a) for which the defendant is being tried or is a witness in a trial for an offense listed in subsection (a);

(C) is found by the court to be a child who should be permitted to testify outside the courtroom because:

(i) a psychiatrist has certified that the child's testifying in the courtroom would be a traumatic experience for the child;

(ii) a physician has certified that the child cannot be present in the courtroom for medical reasons; or

(iii) evidence has been introduced concerning the effect of the child's testifying in the courtroom, and the court finds that it is more likely than not that the child's testifying in the courtroom would be a traumatic experience for the child;

(2) the prosecuting attorney has informed the defendant and the defendant's attorney of the intention to have the child testify outside the courtroom; and

(3) the prosecuting attorney informed the defendant and the defendant's attorney under subdivision (2) within a time that will give the defendant a fair opportunity to prepare a response before the trial to the prosecuting attorney's motion to permit the child to testify outside the courtroom.

(e) If the court makes an order under subsection (b), only the following persons may be in the same room as the child during the child's testimony:

(1) Persons necessary to operate the closed circuit television equipment.

(2) Persons whose presence the court finds will contribute to the child's well-being.

(3) A court bailiff or court representative.

(f) If the court makes an order under subsection (c), only the following persons may be in the same room as the child during the child's videotaped testimony:

(1) The judge.

(2) The prosecuting attorney.

(3) The defendant's attorney (or the defendant, if the defendant is not represented by an attorney).

(4) Persons necessary to operate the electronic equipment.

(5) The court reporter.

(6) Persons whose presence the court finds will contribute to the child's well-being.

(7) The defendant, who can observe and hear the testimony of the child without the child being able to observe or hear the defendant. However, if the defendant is not represented by an attorney, the defendant may question the child.

(g) If the court makes an order under subsection (b) or (c), only the following persons may question the child:

(1) The prosecuting attorney.

(2) The defendant's attorney (or the defendant, if the defendant is not represented by an attorney).

(3) The judge.

quently divorced in November of 1983. Carla Myers married Mark Myers following her divorce from appellant. T.B. lived with Carla Myers, Mark Myers, and Jason Skeen, Carla's son from a previous unrelated marriage.

The charging information stated that appellant fondled and touched T.B. with the intent to arouse his sexual desires on or about the fourth day of April, 1986, to on or about the fifth day of April, 1986. Pursuant to a court visitation order in effect in April of 1986, T.B. spent Friday night, April 4, and Saturday night, April 5, with appellant at the home of appellant's mother, Rosemary Brady. Appellant returned T.B. to Carla Myers's home on Sunday, April 6, at 6:00 p.m.

On Monday morning, one of T.B.'s teachers discovered T.B. hiding in the bathroom closet and complaining that her "gina" hurt. The teacher called Mark Myers and he came and took T.B. home. This event brought about a prompt physical examination of the child by a physician. The physician observed a large hematoma on the right labia majora, a deep laceration which followed the line between the labia majora and the labia minora, and a rather deep tear that extended downward toward the anus. One of these lacerations was inside the vagina while the other was outside the vagina. The physician's opinion was that these injuries were caused by sexual abuse.

During the three months following the discovery of the child's injury, the child made several statements to investigators that it had been appellant who had hurt her. Charges were subsequently filed July 8, 1986.

On January 30, 1987, the State, pursuant to I.C. 35–37–4–8, moved the court to order that T.B.'s testimony be videotaped for use at trial. The parties submitted briefs on the constitutionality of this statute and on February 10, a hearing was held to resolve this issue. The trial court ruled that I.C. 35–37–4–8 was constitutional and denied appellant's motion to deny the State's request to videotape T.B.'s testimony. On February 13, the trial court ruled that it was more likely than not that it would be traumatic for T.B. to testify in court and ordered that the videotape testimony be taken.

On March 14, 1987, T.B.'s videotape testimony was taken and was subsequently admitted at trial over appellant's objection and viewed by the jury. The tape had been taken at home in T.B.'s kitchen and bedroom. The judge, prosecutor, defense attorney, investigator, T.B.'s mother, and the operator of the video equipment were present during the videotaping. The videotape session lasted approximately two hours. Appellant was situated in the garage of the house, and he was able to see and hear T.B. via closed circuit television as she was questioned. Appellant was also able to speak with defense counsel by a microphone hook-up. T.B. was not able to see or hear appellant and was not aware of his presence. Mark Myers was permitted to view T.B.'s testimony via closed circuit television in the garage with appellant. In sum, the trial court scrupulously followed the statute.

## I. RIGHT OF CONFRONTATION

### A. Constitutionality of Statute Under the Federal Constitution

Appellant maintains that this statute is unconstitutional on its face as it infringes upon his right to confront the witnesses against him as guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 13 of the Indiana Constitution. In considering appellant's constitutional challenges, we accord the statute with every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585. Before a statute will be declared repugnant to the Constitution, the claim of unconstitutionality must have been fully litigated in a suitable adversary atmosphere and its fatal constitutional defects must be clearly apparent. *Board of Comm'rs. v. Kokomo City Plan Comm'n.* (1975), 263 Ind. 282, 330 N.E.2d 92. Furthermore, a statute will not be declared void as unconstitutional if only part of the

statute is unconstitutional and that part may be excised without altering the meaning of the statute or if the statute is subject to a reasonable construction which renders it constitutional.

[redacted] The right of confrontation is a fundamental right ensured by the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, wherein it provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article I, § 13 of the Indiana Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...." In *Miller v. State* (1987), Ind., 517 N.E.2d 64, this Court upheld the constitutionality of a former version of this statute against claims under both of these constitutional provisions, while holding that a videotaped statement of a child witness had been erroneously admitted because of the absence of any opportunity for cross-examination. The statutory provisions at issue in the present appeal, however, are significantly different.

The right of confrontation under the Sixth Amendment is honored where "the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer,* 474 U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15, 21 (1985) (per curiam) (quoted in *Maryland v. Craig,* 497 U.S. ——, 110 S.Ct. 3157, 3164, 111 L.Ed.2d 666, 679 (1990)). In *Craig,* the Supreme Court went on to state that "we have never insisted on an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant." *Craig,* 497 U.S. at ——, 110 S.Ct. at 3164, 111 L.Ed.2d at 680 (emphasis in original). Thus, the defendant's opportunity for cross-examination has been interpreted as being the essential purpose of the federal confrontation right.

The statute in question in this case is similar to the Maryland statute which was reviewed by the United States Supreme Court in *Craig.*[2] The Supreme Court upheld the constitutionality of the Maryland statute as it found that the admission of the child victim's live testimony at the time of trial, transmitted to the courtroom and the trier of fact via one-way closed circuit television, was consonant with the Confrontation Clause. The Supreme Court noted:

> We find it significant ... that Maryland's procedure preserves all of the oth-

2. Section 9–102 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland (1989) provides in full:

(a)(1) In a case of abuse of a child as defined in § 5–701 of the Family Law Article or Article 27, § 35A of the Code, a court may order that the testimony of a child victim be taken outside the courtroom and shown in the courtroom by means of closed circuit television if:

(i) The testimony is taken during the proceeding; and

(ii) The judge determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate.

(2) Only the prosecuting attorney, the attorney for the defendant, and the judge may question the child.

(3) The operators of the closed circuit television shall make every effort to be unobtrusive.

(b)(1) Only the following persons may be in the room with the child when the child testifies by closed circuit television:

(i) The prosecuting attorney;

(ii) The attorney for the defendant;

(iii) The operators of the closed circuit television equipment; and

(iv) Unless the defendant objects, any person whose presence, in the opinion of the court, contributes to the well-being of the child, including a person who has dealt with the child in a therapeutic setting concerning the abuse.

(2) During the child's testimony by closed circuit television, the judge and the defendant shall be in the courtroom.

(3) The judge and the defendant shall be allowed to communicate with the persons in the room where the child is testifying by any appropriate electronic method.

(c) The provisions of this section do not apply if the defendant is an attorney pro se.

(d) This section may not be interpreted to preclude, for purposes of identification of a defendant, the presence of both the victim and the defendant in the courtroom at the same time.

er elements of the confrontation right: the child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by videotape monitor) the demeanor (and body) of the witness as he or she testifies.

*Id.* at ——, 110 S.Ct. at 3166, 111 L.Ed.2d at 682. The Supreme Court went on to state that in some cases the State's interest in protecting a child witness from serious emotional distress and trauma occasioned by testifying in the courtroom and in the presence of the defendant may outweigh a defendant's right to face his or her accusers in court, thus permitting the direct and cross-examination of the child witness to be conducted at a location outside the courtroom, connected to the courtroom by one-way closed circuit television, while the defendant and the trier of fact remain in the courtroom and view the witness on a television screen. In such instances, the Supreme Court concluded that it was not necessary that the child witness be able to view, to hear, or otherwise perceive the presence of the defendant, who is viewing and listening in at the time. That Court, however, did not consider whether such examination could take place at some time before trial, be recorded on videotape, and be subsequently replayed for the trier of fact at trial.

The Indiana statute is, in most respects, like the Maryland statute which the Supreme Court upheld in *Craig*. Our statute contains an express statutory requirement of a trial court finding that trauma to the child witness will result from "testifying in the courtroom." Our statute as written, when tested by the Sixth Amendment, would be constitutional if construed to also include the Sixth Amendment requirement that such trauma stem from testifying in the presence of the accused, since the statute permits the witness to testify without being able to see or hear the accused. The Indiana statute requires that the defendant hear and see the witness, but is silent with respect to the means by which this is to be accomplished. To construe this require-

ment to permit such hearing and seeing by closed circuit television is not foreclosed by the federal Constitution. The Indiana statute permits the court to prevent the child witness from hearing and seeing the defendant at the time of testifying, which is likewise not foreclosed by the federal Constitution. The statute permits the defendant's attorney (or the defendant, if the defendant is not represented by an attorney) to fully question the child, with contemporaneous communication between the defendant and defense counsel. Further, the requirement in the Indiana statute that the testimony be played to the jury via closed circuit television or through the use of videotape ensures that the jury will be able to observe the demeanor of the child witness at the time of direct and cross-examination.

The single significant dissimilarity in the two statutes appears to be that the Indiana statute, unlike the Maryland statute, authorizes the use of videotaped pre-trial statements as well as the use of closed circuit television during trial. In light of the Supreme Court's analysis in *Craig*, however, we do not believe that the balance struck between the Confrontation Clause and the state interest in protecting the child witness would be different by reason of the differences between these two methods of presenting testimony. We therefore conclude that the Indiana statute, properly construed, satisfies the requirements of the federal confrontation right.

**B. Constitutionality of Statute Under Indiana Constitution**

■ This Court has recently examined the origins and traced the development of the right of criminal defendants to meet the witnesses face to face as this right is guaranteed by Article I, § 13 of the Indiana Constitution. *Miller*, 517 N.E.2d 64. Article I, § 13 provides: "In all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...." This Court has long recognized that this basic trial right is an ancient one with roots in the common law and that its design has more than a single part. Be-

cause this right is secured by the Constitution, it cannot be abridged by judicial or legislative action. *Graves v. State* (1931), 203 Ind. 1, 178 N.E. 233.

To a considerable degree, the federal right of confrontation and the state right to a face-to-face meeting are co-extensive. *Miller*, 517 N.E.2d 64. The language employed in the two provisions is different, however, and as we approach the task of construing our state constitution it is appropriate that we start again with the language. The words "face to face" as used in the passage is an adverbial phrase modifying "to meet", and thus describes how a criminal defendant in this state and the State's witnesses are to meet. "Hand in hand" and "back to back" are similar modifiers. The separate definition given it in most dictionaries shows its persistent and common usage. In the first standard English language dictionary, appearing in 1755, it is printed that "face to face" is "without the interposition of other bodies." Johnson's Dictionary. According to the second great standard English language dictionary, published in 1856, "face to face" is defined as the "state of confrontation. The witnesses were presented face to face." An American Dictionary of the English Language, Noah Webster. And in the third great dictionary, published in 1928, the first choice definition is "looking one another in the face." Oxford English Dictionary. In a leading American dictionary published in 1942, the meaning given is "[i]n the presence of each other; as, to bring the accuser and the accused face to face." Webster's New International Dictionary, Second Edition. Of the various meanings which this phrase undoubtedly has in context with the rest of Article I, § 13 and in law, its literal meaning is primary, unmistakable, and dominant. A face-to-face meeting occurs when persons are positioned in the presence of one another so as to permit each to see and recognize the other. While the language employed in Article I, § 13 of our Indiana Bill of Rights has much the same meaning and history as that employed in the Sixth Amendment, it has a special concreteness and is more detailed.

In applying this constitutional provision, this Court has concluded that it is in the nature of a privilege which concerns the individual defendant and bears only upon the procedure on the trial. *Butler v. State* (1884), 97 Ind. 378. Thus, it may be waived. *Kempa v. State* (1945), 223 Ind. 120, 58 N.E.2d 934; *Brown v. State* (1941), 219 Ind. 251, 37 N.E.2d 73. The right does not exist when the deposition of a witness is taken. *Jones v. State* (1983), Ind., 445 N.E.2d 98; *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691. The right does not exist with respect to persons who are not called as witnesses by the State, including those who have formerly signed charging instruments. *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22.

The right is not absolute. It is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial again because he has died, become insane, or is permanently or indefinitely absent from the state and is therefore beyond the jurisdiction of the court in which the case is pending. *Wilson v. State* (1910), 175 Ind. 458, 93 N.E. 609. In such cases, there has been a prior face-to-face meeting with the opportunity to cross-examine the witness before a trier of fact in the same case and a necessity for the reproduction of testimony exists. Such an opportunity for cross-examination in a prior civil case, however, will not suffice. *Green v. State* (1932), 204 Ind. 349, 184 N.E. 183.

Exceptions to the hearsay exclusionary rule are not per se consistent with the State constitutional right to meet the witnesses face to face, but must be separately tested. The admission of evidence of a bad reputation, under an exception for such evidence, to prove a fact upon which the State bears the burden of proof is a violation of the right to meet the witnesses face to face. *Sumpter v. State* (1974), 261 Ind. 471, 306 N.E.2d 95. The official records exception of Ind. Trial Rule

44 is, however, consonant with the right in a trial on habitual offender status. *Wilson v. State* (1987), Ind., 513 N.E.2d 653.

In *Green*, 204 Ind. 349, 184 N.E. 183, this Court reversed the defendant's conviction for receiving a deposit, knowing that the bank was insolvent, because the trial court improperly admitted the finding of insolvency from the civil action into the criminal action. The Court stated:

One of the questions for the jury to decide was the solvency or insolvency of the bank, but by the introduction of the records and judgment in the civil action, the question was already decided in that particular case, and we know from common experience that a jury would probably follow the finding, on the question of solvency, as found in the civil action; *and this being true the right to cross-examine was taken away from the defendant, and also his constitutional right to meet the witnesses face to face.*

*Id.* at 359, 184 N.E. at 187 (emphasis added). Similarly, in *Marjason v. State* (1947), 225 Ind. 652, 75 N.E.2d 904, this Court stated that "[u]nder Section 13 of Article I of the Constitution of the State of Indiana, the accused in a criminal prosecution is given a number of rights, among which is a right 'to meet the witnesses face to face.' Meeting the witnesses face to face must also include the right to cross-examination." *Id.* at 653–654, 75 N.E.2d at 905.

■ These cases exemplify this Court's tradition of recognizing that Indiana's confrontation right contains both the right to cross-examination and the right to meet the witnesses face to face. It places a premium upon live testimony of the State's witnesses in the courtroom during trial, as well as upon the ability of the defendant and his counsel to fully and effectively probe and challenge those witnesses during trial before the trier of fact through cross-examination. The defendant's right to meet the witnesses face to face has not been subsumed by the right to cross-examination. That is to say, merely ensuring that a defendant's right to cross-examine the witness is scrupulously honored does not guarantee that the requirements of Indiana's Confrontation Clause are met. The Indiana Constitution recognizes that there is something unique and important in requiring the face-to-face meeting between the accused and the State's witnesses as they give their trial testimony. While the right to cross-examination may be the primary interest protected by the confrontation right in Article I, § 13 of the Indiana Constitution, the defendant's right to meet the witnesses face to face cannot simply be read out of our State's Constitution.

While not according it the same status as we have found to exist in the Indiana Constitution, Federal courts have likewise noted the importance of this face-to-face confrontation in their analysis of the Sixth Amendment confrontation right. Justice Scalia, for example, noted: "[F]ace-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult." *Coy v. Iowa*, 487 U.S. 1012, 1020, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 866 (1988). Further, the Eighth Circuit Court of Appeals has stated that "[m]ost believe that in some undefined but real way recollection, veracity, and communication are influenced by face-to-face challenge. This feature is a part of the sixth amendment right additional to the right of cold, logical cross-examination by one's counsel." *United States v. Benfield*, 593 F.2d 815, 821 (8th Cir.1979) (footnote omitted).

■ I.C. 35–37–4–8 contains a provision, subsection (f)(7), which specifies that a child who is being videotaped shall not be able to observe or hear the defendant, unless the defendant opts to proceed without counsel. We find that the operation of subsections (c) and (f)(7) of this statute, subsections which the trial judge adhered to in this case, to be violative of Article I, § 13 of the Indiana Constitution in that they infringe upon the defendant's right to confront the witnesses against him face to face as they give their trial testimony. When the operation of the subsections is foreclosed in this manner, the statute is nevertheless left in a sensible and admin-

istrable form. The trial court retains significant authority under the statute.

The essential purpose of I.C. 35-37-4-8 as a whole is to protect child witnesses and other witnesses who fall within the class of persons labeled "protected persons" from the potentially traumatic experience of having to testify in open court before the person they are accusing. In removing the protected person from the often intimidating and sterile environs of the courtroom to a nearby private room during the trial and interposing a two-way closed circuit television arrangement which would permit the witness to see the accused and the trier of fact and would allow the accused and the trier of fact to see and hear the witness, the witness's testimony would be facilitated and the threat of emotional or mental harm to the witness would be significantly reduced. In such a closed circuit arrangement, there is no person or body interposed between the witness and the accused and a face-to-face meeting as contemplated by the Constitution occurs. In such manner, the main goal of the statute, reducing the trauma caused by in-court testimony before the accused, can still be achieved in large measure without compromising appellant's constitutional right to meet the witnesses face to face.

■ In light of the foregoing analysis, we hold that the trial court erred in admitting T.B.'s videotaped testimony of March 14, 1987, over appellant's objection that such testimony violated the Confrontation Clause of the Indiana Constitution. Further, we cannot find the admission of this evidence to be harmless as the videotape contained numerous statements incriminating to appellant. Appellant's conviction for child molesting is therefore reversed and the cause is remanded for a new trial.

## II. SUFFICIENCY OF THE EVIDENCE

■ Having found that T.B.'s videotaped testimony was improperly admitted into evidence at trial, thus requiring the grant of a new trial, the Double Jeopardy Clause of the federal Constitution requires that we also address the sufficiency of evidence issue raised by appellant.

*Williams v. State* (1989), Ind., 544 N.E.2d 161. In *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the United States Supreme Court held that where the

trial court erred in admitting a particular piece of evidence [without which] there was insufficient evidence to support a judgment of conviction [and where] clearly *with* that evidence, there was enough to support the sentence[,] ... a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause....

*Id.* at 40-41, 109 S.Ct. at 290-91, 102 L.Ed.2d at 273-74. This Court has likewise held that "where the appellate court reverses the conviction for 'trial error' and the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, no double jeopardy question is presented on a retrial." *Perkins v. State* (1989), Ind., 542 N.E.2d 549, 551. *See also Phillips v. State* (1989), Ind., 541 N.E.2d 925; *Henson v. State* (1989), Ind., 535 N.E.2d 1189; *Small v. State* (1988), Ind., 531 N.E.2d 498.

Here, the evidence presented at appellant's trial was sufficient to support appellant's conviction. The testimony of Elaine Battles and Sanford Brook, who both testified that T.B. informed them that appellant hurt her, coupled with the erroneously admitted videotaped testimony of the victim, constitutes sufficient evidence to support appellant's conviction. Thus, this cause can be remanded for retrial without offending the protections afforded by the Double Jeopardy Clause.

The judgment of the trial court is reversed and this case is remanded for retrial.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with separate opinion in which KRAHULIK, J., concurs.

KRAHULIK, J., dissents with separate opinion in which GIVAN, J., concurs.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion. The majority has observed correctly that the Indiana statute does not violate the constitution of the United States. However, the majority finds that the statute does violate the "face-to-face" requirement of the constitution of Indiana.

I believe the majority opinion in the Court of Appeals correctly addressed this question. At the time our constitutions were written and the dictionary definitions of "face to face" were written, society did not have the benefit of the various electronic devices which now are available for the preservation and presentation of evidence.

There is no question that the "face-to-face" rule is an essential part of our judicial system and should be guarded carefully to assure due process. The Indiana statute, at issue here, demonstrates that the legislature was fully aware of this need and at the same time was addressing a very serious social problem of the extreme psychological impingement resulting from the requirement of in-court testimony of child victims of molestation.

The statute sets out guidelines and requires those guidelines to be implemented by the trial court before ordering the videotaping of a child. When those guidelines are followed, the accused has every opportunity, through his attorney, or by himself, if he is appearing *pro se*, to face his accuser and fully explore the possibilities that her version of the incident is not correct.

On the one hand, I can see little if any impairment to a defendant's ability to defend himself under the implementation of the statute. On the other hand, I see great potential harm to the psyche of the child witness if required to appear in open court. In some cases the harm might be so great as to cause a lifetime impairment.

In preserving the rights of a defendant, I do not think we should become so technically involved that we unnecessarily traumatize the victim. I believe the statute is drawn carefully and was implemented properly in this case.

I would affirm the trial court.

KRAHULIK, J., concurs.

KRAHULIK, Justice, dissenting.

I respectfully dissent from the majority opinion.

Brady alleges that Indiana Code Section 35–37–4–8, the statutory provision allowing for videotaped testimony of child witnesses to be admitted in lieu of actual appearance at trial is unconstitutional under both the Sixth Amendment of the United States Constitution and article 1, § 13 of the Indiana Constitution. Because I do not believe that the statute is constitutionally deficient under either the Federal or the Indiana Constitution, I dissent.

The majority correctly concludes that the statute passes muster under the Federal Constitution's requirement of confrontation. I believe that the statute also is appropriate under the provisions of the Indiana Constitution.

Unlike the Sixth Amendment of the United States Constitution, which guarantees the accused in a criminal proceeding the right "to be confronted with the witnesses against him," *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), Article I, Section 13, of the Indiana Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right ... to meet the witness face to face." Although little is known about the actual intention of the framers when drafting this language, it can naturally be assumed that they were guided by a desire to provide protections similar to those guaranteed by the 6th Amendment. *See generally, Debates of Indiana Convention, 1850.* In accomplishing this task they chose words that conveyed specific meanings. By examining the generally accepted common and legal meanings of the words selected we can ascertain what principles the framers singled out for protection. These are the ideas to which we must be true.

In Noah Webster's American Dictionary of the English Language, published in

1856, "face to face" is defined as the "state of confrontation." *Bouvier's Law Dictionary*, published in 1883 provides the following definition of "confrontation":

> The act by which a witness is brought into the presence of the accused, so that the latter may object to him, if he can, and the former may know and identify the accused and maintain the truth in his presence.

*Bouvier's Law Dictionary*, 1883, Vol. 1 at 369.

These definitions suggest that the drafters designed the confrontation provision of Article I, Section 13 to accomplish three essential objectives: to allow the witness to make an identification of the accused, to afford the defendant the opportunity to challenge or examine the witness, and to create a setting that would impress the witness with the importance of his task and encourage his truthful testimony.

Of these elements, the right of the defendant to examine the witness is most sacred. "Indiana courts have clearly determined that cross-examination is the primary interest secured by the confrontation right in Article I, Section 13, of the Indiana Constitution." *Miller v. State* (1987), Ind., 517 N.E.2d 64, 69. In *Miller*, a decision upholding the constitutionality of I.C. § 35-37-4-6 (Burns 1987 Supp.), which provided for the admissibility of videotaped statements of sex abuse victims under the age of ten, this court adopted a description of the vital elements of confrontation at trial provided in *Mattox v. United States* as:

> [A] personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and shifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Miller* at 68, *quoting, Mattox v. United States* (1895), 156 U.S. 237, 242-43, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411.

Therefore, confrontation requires the government to provide procedures that give the accused the ability to test the witness' accuracy and credibility before the trier of fact. Any method accomplishing those objectives is sufficient under the Constitution's confrontation provision.

The procedures outlined in I.C. § 35-37-4-8 do not impair the defendant's right or ability to cross-examine the witness. The accused's interest in participating in his defense in a meaningful way is insured. Under either of the prescribed protocols listed in the statute, the defendant retains the ability to see and hear the witness' testimony as it is given. He may communicate with his counsel contemporaneously for the purpose of making observations and suggestions. Additionally, the trier of fact, under both the closed-circuit or pre-taped arrangement, will view the witness' examination for the purpose of assessing demeanor and credibility. The arrangement provided in the statute does not hinder cross-examination, it merely requires that it be done in a less threatening setting than in a full court room.

A second rationale for requiring the witness to make his charges in the defendant's physical presence is that by requiring the accused to look the defendant in the eye he is more likely to be truthful. In molestation cases, however, face to face confrontation may do more to hinder full, honest testimony by the witness than to encourage it. The nature of the relationship between the witness and the accused, the highly embarrassing character of the testimony and the courtroom setting itself combine to create a stressful, traumatic environment likely to make the child a reluctant, unreliable witness. Particularly, in cases where the accused is a family member or trusted friend the child is likely to be intimidated from giving clear, honest testimony out of fear, respect for authority, or even love of the accused.

Opponents of these alternate methods of testimony argue that although it is unfortunate that in-court testimony is difficult for the witness, such "trial by ordeal" is necessary to expose the witness who has

been coached or is lying. Although logical, this argument mischaracterizes the nature and purpose of witness examination. Trial testimony, although naturally somewhat stressful, is not intended to be an ordeal for the witness. Rather, it is designed to be an engine for seeking and attaining truth. The revelation of an untruthful witness is properly the result of skillful cross-examination and not of a "stare-down" from the accused. The statute does not deprive the defendant of the right to conduct a thorough, vigorous, cross-examination in full view of the jury. The statute is designed merely to allow the witness to testify in a less intimidating setting and thereby *increase* the chances for complete, honest testimony while decreasing the trauma to the child.

At least thirty-four other states have accepted these and other similar arguments and drafted statutes allowing videotaped testimony for child victims of or witnesses to certain types of crimes. *Miller* at 67–68, n. 4. Twenty-three have established procedures for testimony over closed-circuit television. *Id.* at 68, n. 5. Although the statutes vary greatly, each evidences a belief that some measure must be taken to provide additional protection for child witnesses and that these safeguards can be created without endangering the constitutional rights of an accused.

A majority of the statutes challenged in their state court have been upheld. Notably, the constitutions of several of these states contain the same "face to face" language found in our Constitution. *See e.g., Kentucky Constitution* section 11. Kentucky's highest court upheld the constitutionality of their statute in *Commonwealth v. Willis* (1986), Ky., 716 S.W.2d 224.

Indiana's requirement of face-to-face meetings is not to be read for its literal language but for the intentions conveyed by that language. *Miller* at 71. The framers' objective in including Article I, Section 13, was to ensure protection of the defendant's right to conduct a cross-examination of the witness that could be viewed by the trier of fact. The choice of the "face-to-face" language stemmed from the inability to predict technology that would meet its objectives without requiring actual physical presence of the witness in the courtroom. The accused does not have a constitutionally protected right to stand eyeball to eyeball with his accuser. The essential issue is whether the procedure in question ensures the rights outlined by the framers. I believe it does.

GIVAN, J., concurs.