

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-CR-183

## Ajaylan M. Shabazz,
*Appellant*



FILED

Feb 23 2026, 1:37 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## State of Indiana,
*Appellee*

Argued: September 30, 2025 | Decided: February 23, 2026

Appeal from the Allen Superior Court
No. 02D06-2111-MR-20
The Honorable David Zent, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-909

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Remote court proceedings became commonplace during the COVID-19 pandemic, and that forced experiment revealed several advantages, such as increased access, efficiency, and flexibility. But when testimony is involved, remote proceedings can pose heightened risks to individual rights. With those risks in mind, Interim Administrative Rule 14(C) makes clear that no part of a testimonial proceeding can occur remotely unless the proponent shows good cause and the proceeding complies with constitutional guarantees. This case tests those limits in a criminal trial.

Here, the State asked the court to allow a witness in a murder trial to testify remotely, representing that he was incarcerated four hours away and that the county jail lacked the resources to transport him. Over the defendant's objection, the court granted the request. The witness testified virtually and implicated the defendant in the murder. After the jury returned a guilty verdict, the defendant asserted on appeal that the court erred in permitting the testimony because the State failed to show good cause.

We agree and take this opportunity to set forth the standard for good cause under Interim Rule 14(C) when the State seeks to present remote testimony in a criminal trial. In these circumstances, the State must present case-specific evidence that permitting a particular witness to testify remotely is necessary to prevent a concrete and substantial harm that would otherwise likely occur and that could not be adequately addressed if the witness were to testify in person. Because the State failed to make that showing here, we hold that the trial court abused its discretion by allowing the witness to testify virtually. But because we hold the error was harmless, we affirm.[1]

---

[1] We held oral argument at Hanover College. We thank the college for its hospitality, the attorneys for their excellent advocacy, and the students and guests for their courtesy and insightful questions following argument.

# Facts and Procedural History

In May 2021, four individuals—Ajaylan Shabazz, Ariona Darling, Dustin Blair, and Tiffany Ferris—often snuck into a filthy storage room at a motel for shelter and to use drugs. Dustin was new to the group, only knowing the others for a week or so. But Shabazz, Ariona, and Tiffany had known each other for a few months. Shabazz claimed to look after the two women, as "it was easy for them to be exploited," and he referred to Ariona as his fiancée.

On the evening of May 9, the four individuals were in the storage room, with Tiffany sleeping in a chair as she withdrew from fentanyl. A bit later, Shabazz and Ariona walked to a nearby gas station where they encountered a stranger, Terry Smith, who was in town for the night. Terry tried to "buy" Ariona, but when Shabazz told him she was his fiancée, the men instead discussed trading and doing drugs. So, Terry drove them to the motel, and they all entered the storage room.

Soon after their arrival, Dustin left the room, but Tiffany remained "dope sick" in the chair. Shabazz then briefly left to coordinate his end of a drug deal for Terry. At that point, Ariona started "looking for something," which led to her accusing Tiffany of stealing drugs. When Tiffany denied it, Ariona made Tiffany, who was much smaller, strip off her clothing and started beating her.

Sometime during the altercation, Shabazz reentered the storage room and joined in the beating. He "picked Tiffany up easily and slammed her" down, causing her head to hit the corner of a dresser. He also kicked her and stomped on her head. Tiffany was bleeding profusely, including on the carpet, and begged to be let go. But Ariona told Shabazz they needed to "take care of this" and "finish her off," so he helped pick Tiffany up and carry her to the bathtub. Shabazz and Ariona then began cleaning up the room, which included cutting up bloody portions of the carpet. Later that morning, when Shabazz, Ariona, and Terry left together in Terry's truck, Tiffany remained bloody, naked, and motionless in the bathtub. And that was how Dustin found her when he returned to the storage room, after which police arrived and pronounced her dead.

The State charged Shabazz with Tiffany's murder under an accomplice liability theory. During preliminary discussions on the first day of the jury trial, the State told the court it was unable to secure the presence of one of its witnesses, Miquan Jones, who was incarcerated at the time. Though the State represented that it had filed a transport order one week before trial, the record contains no supporting documentation. *See* Ind. Appellate Rule 50(B)(1)(d). Even so, the State requested that Jones be permitted to testify virtually, telling the court that the county jail lacked "the resources" to transport him to trial because he was in a prison located four hours away. Shabazz objected. But the trial court overruled the objection, reasoning that the county "doesn't have unlimited resources as in if they can't get him, they can't get him."

During trial, the State called twenty-one witnesses, including Terry and Dustin. Ariona couldn't testify because she had passed away before trial, but Terry gave an eyewitness account of Shabazz's involvement in Tiffany's murder. And Dustin testified that Shabazz later admitted to him that he had committed the murder and warned Dustin to keep quiet. Before Jones provided similar testimony virtually, Shabazz renewed his objection. The court again overruled it, and the jury heard Jones testify via live, two-way video that, while he and Shabazz were both incarcerated in the county jail, Shabazz admitted to killing Tiffany and then threatened Jones to keep quiet. The jury also learned that Jones had contacted the State to offer to testify against Shabazz in exchange for being released on home detention and that he had been so released.

The State also presented testimony establishing that Tiffany died from drowning after sustaining multiple blunt-force injuries consistent with punching and kicking. DNA evidence further showed that Tiffany's blood was recovered from Shabazz's shoes. And the State introduced an incriminating letter that Shabazz had written to Terry. Shabazz also testified, claiming that Terry murdered Tiffany but admitting that he had helped carry her into the bathroom. The jury ultimately found Shabazz guilty, and the court imposed a sixty-three-year sentence.

Shabazz appealed, raising several issues, including that the trial court erred by permitting Jones to testify virtually. The Court of Appeals

disagreed, concluding that good cause supported allowing Jones to testify virtually and that the testimony did not violate Shabazz's constitutional confrontation rights. *Shabazz v. State*, 255 N.E.3d 533, 542 (Ind. Ct. App. 2025). Judge Tavitas wrote separately, disagreeing with both conclusions. *Id.* at 550 (Tavitas, J., concurring in result). But she concurred in result, finding that any error was harmless beyond a reasonable doubt. *Id.*

Shabazz petitioned for transfer, which we granted, thereby vacating the Court of Appeals' opinion. App. R. 58(A).[2]

## Standard of Review

Resolving this appeal turns on interpreting and applying Interim Administrative Rule 14(C), which permits courts to conduct a testimonial proceeding "remotely for all or some of the case participants for good cause shown." Ind. Interim Administrative Rule 14(C). We determine what constitutes good cause de novo, but we review a trial court's good-cause determination for an abuse of discretion. *B.N. v. Health & Hosp. Corp.*, 199 N.E.3d 360, 363 (Ind. 2022).

## Discussion and Decision

Over the past five years, courts nationwide have seen a significant increase in remote proceedings. Indiana is no different. And since January 2023, such proceedings have been governed by Interim Administrative Rule 14. That rule defines a "remote proceeding" as "any proceeding, including without limitation entire proceedings or parts of it, using telephone or videoconferencing capabilities to allow case participants to appear virtually." Interim Admin. R. 14(A)(1). There is no question that the rise of virtual participation has enhanced access, efficiency, and flexibility for parties and lawyers alike. But not all court proceedings are

---

[2] We granted transfer to address only the remote-testimony issue. We summarily affirm the remaining portions of the Court of Appeals' opinion. *See* App. R. 58(A)(2).

the same. To that point, for testimonial proceedings—those where a trial court receives sworn oral testimony—the rule expressly acknowledges that "[p]resenting live testimony in court remains of utmost importance." Interim Admin. R. 14 cmt.

Consistent with this recognition, Interim Rule 14 establishes a presumption that all testimonial proceedings, such as criminal trials, will be conducted in person. Interim Admin. R. 14(C). But there are exceptions. Relevant here, a court can conduct a testimonial proceeding "remotely for all or some of the case participants for good cause shown." *Id.* In addition to this good-cause showing, the proceeding "must comply with constitutional and statutory guarantees." *Id.*

In the civil context, we have explained that the good-cause showing requires "particularized and specific factual support." *B.N.*, 199 N.E.3d at 364. But we have not decided whether this same standard applies in criminal cases—particularly when, as here, the State asks a court to permit a witness to testify virtually. Unlike in civil cases, such a request in a criminal trial necessarily implicates a defendant's constitutional rights to confront adverse witnesses, as guaranteed by Article 1, Section 13 of the Indiana Constitution and the Sixth Amendment to the United States Constitution. *See* Ind. Const. art. 1, § 13; U.S. Const. amend. VI. And, as Judge Tavitas observed in her concurrence, those rights are uniquely vulnerable when testimony is presented remotely, since video or telephonic formats may diminish a witness's sense of the proceedings' gravity or constrain the factfinder's ability to fully assess a witness's demeanor in evaluating credibility. *See Shabazz*, 255 N.E.3d at 553 (Tavitas, J., concurring in result); *see also United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) ("The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation.").

Against this backdrop, this case requires us to clarify how Interim Rule 14 applies in criminal proceedings when remote testimony intersects with a defendant's constitutional rights to confrontation. Shabazz asserts that the trial court erred by allowing Jones to testify virtually because the State failed to make the requisite good-cause showing and that the testimony violated his confrontation rights. The State counters that it provided, and

the trial court made, "particular findings of good cause based on the circumstances in this case" and that Shabazz waived his constitutional claims by failing to make a cogent argument.

We agree with the State that Shabazz waived his constitutional challenges. He failed to explain how the trial court deprived him of his confrontation rights, to develop an argument under either constitutional provision, or to analyze authority in support of these challenges. *See* App. R. 46(A)(8)(a); *Keller v. State*, 549 N.E.2d 372, 373 (Ind. 1990) ("[A] court which must . . . make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator."). But we agree with Shabazz that the State failed to show the requisite good cause. In reaching this decision, we conclude Interim Rule 14(C) requires a heightened good-cause showing—informed by, but separate from, a defendant's constitutional rights to confront witnesses— when the State seeks to have a witness testify remotely in a criminal trial. And because the State failed to make that showing here, we hold that the trial court abused its discretion by permitting Jones to testify virtually. But because we hold that the error was harmless, we affirm.

## I. The trial court abused its discretion by permitting Jones to testify virtually.

We first address the standard governing how the State shows "good cause" for a trial court to permit a witness to testify remotely against a criminal defendant at trial under Interim Rule 14(C). Because the rule authorizes remote participation in a testimonial proceeding only if it complies with constitutional guarantees, the good-cause showing in a criminal case is necessarily shaped by a defendant's constitutional rights. And because both the Indiana and federal constitutions guarantee a defendant the right to confront adverse witnesses face to face, those rights inform the meaning of "good cause" in this context. But we address only how a criminal defendant's confrontation rights bear on Interim Rule 14(C). We do not conduct a constitutional analysis here, as this appeal does not present a preserved constitutional challenge.

Ultimately, we conclude that to show good cause under Interim Rule 14(C) for remote testimony in a criminal trial, the State must present case-specific evidence that allowing a particular witness to testify remotely is necessary to prevent a concrete and substantial harm that would otherwise likely occur and that could not be adequately addressed if the witness were to testify in person. Applying that standard here, we hold that the State failed to make the required showing, and thus the trial court abused its discretion by permitting Jones to testify virtually.

### A. In a criminal trial, the good-cause showing required by Interim Rule 14(C) for a witness to testify remotely is informed by a defendant's constitutional rights to confrontation.

Three years ago, we explained that a showing of good cause under Interim Rule 14(C) requires "particularized and specific factual support." *B.N.*, 199 N.E.3d at 364. But that holding arose in a civil case. And this is our first time addressing how the good-cause requirement applies in a criminal trial, particularly given the rule's express mandate that the proceeding "comply with constitutional . . . guarantees." Interim Admin. R. 14(C). Because of this mandate, it follows that the State's good-cause showing is informed by the minimum constitutional prerequisites for allowing an adverse witness to testify remotely against a criminal defendant.

Although neither the United States Supreme Court nor this Court has directly addressed whether live, two-way virtual testimony complies with the confrontation rights guaranteed by the Sixth Amendment or Article 1, Section 13, other courts have consistently drawn guidance from *Maryland v. Craig*, 497 U.S. 836 (1990). There, the Supreme Court articulated a two-part framework that has since been adopted by nearly every jurisdiction to consider constitutional challenges to remote testimony in criminal cases. *See State v. Tate*, 985 N.W.2d 291, 299 (Minn. 2023) (collecting cases). While we do not address a constitutional challenge here, we do find one prong of the *Craig* framework applicable to a good-cause showing in a criminal trial under Interim Rule 14(C): the State must present case-

specific evidence that allowing a witness to testify remotely is necessary to further an important public policy interest. *See Craig*, 497 U.S. at 852–55. In this context, an "important public policy interest" is not an abstract governmental interest, but one grounded in the need to prevent a real, identifiable risk of harm that would otherwise result from requiring the witness to testify in the defendant's physical presence. *See id.* at 855–56. This requirement is consistent with the "particularized and specific factual support" good-cause standard under Interim Rule 14(C) for civil cases but heightened to accommodate the unique risk virtual testimony poses to criminal defendants. And it aligns with our precedent interpreting Article 1, Section 13, which similarly permits departures from in-person confrontation when necessary to avert serious harm arising from face-to-face testimony against a defendant. *See Brady v. State*, 575 N.E.2d 981, 988–89 (Ind. 1991).

Accordingly, to establish good cause under Interim Rule 14(C) for permitting a witness to testify remotely against a criminal defendant at trial, the State must present case-specific evidence that allowing the witness to testify remotely is necessary to prevent a concrete and substantial harm that would otherwise likely occur and that could not be adequately addressed if the witness were to testify in person. This heightened showing has two essential components, each of which warrants brief explanation.

First, the State must present case-specific evidence. The trial court is best positioned to balance a defendant's rights against the asserted need for remote testimony in each case. But the court can perform that function only if it is presented with evidence tailored to the specific witness and circumstances at issue. *Cf. G.W. v. Madison State Hosp.*, 245 N.E.3d 153, 159 (Ind. Ct. App. 2024) (finding no error in permitting an involuntary commitment proceeding to take place remotely after considering evidence on how a courtroom hearing would harm the patient's well-being). When the State fails to make this evidentiary showing, the defendant is left with little meaningful opportunity to test the factual basis for the claimed necessity. And without adversarial testing of that necessity, the trial court lacks the factual context required to determine whether remote testimony is truly necessary.

Second, the State must demonstrate that remote testimony is necessary—not merely helpful—to prevent a concrete and substantial harm associated with requiring a particular witness to testify in person. General concerns about efficiency, logistics, or expense are insufficient. *See, e.g.*, *Newson v. State*, 526 P.3d 717, 722 (Nev. 2023); *State v. Rogerson*, 855 N.W.2d 495, 507 (Iowa 2014). Instead, the State must show why in-person testimony would likely cause serious harm and why that harm cannot be mitigated through reasonable measures short of remote testimony. For example, virtual testimony may alleviate the likelihood that a child witness will be traumatized by testifying in the presence of their abuser. *See Craig*, 497 U.S. at 855; *Brady*, 575 N.E.2d at 989. Or it may protect the health and safety of trial participants when there is a heightened risk that a specific witness could spread a highly contagious illness "in a confined courtroom setting." *Tate*, 985 N.W.2d at 302. Across these contexts, the critical inquiry is the same: whether dispensing with in-person testimony from a particular witness is necessary to prevent a concrete and substantial harm that would otherwise occur.

In short, good cause under Interim Rule 14(C) looks different when the State wants to elicit remote testimony against a criminal defendant at trial. In this context, good cause exists only if the State presents case-specific evidence that requiring a particular witness to testify in person would likely result in a concrete and substantial harm, making remote testimony necessary. We now turn to whether the State made that showing here.

## B. The State failed to present case-specific evidence that Jones's virtual testimony was necessary to prevent a concrete and substantial harm.

Recall that during preliminary discussions on the first day of Shabazz's trial, the court granted the State's request to allow Jones to testify virtually. The court made that decision based solely on the State's representations that Jones was incarcerated four hours away and that the county jail did not have the resources to transport him. For two independent reasons, we hold that the State's proffered justification fell short of "good cause shown" under Interim Rule 14(C).

The State did not provide the trial court with any evidence—testimonial, documentary, or otherwise—demonstrating Jones's inability to testify in person. Indeed, the State merely asserted that a transport order had been filed and that the county jail could not bring Jones to trial because it did not "have the resources." The record doesn't include any such transport order. And while we don't doubt the sincerity of these representations, unsworn statements by attorneys are not evidence. *Gajdos v. State*, 462 N.E.2d 1017, 1021 (Ind. 1984); Ind. Pattern Crim. Jury Inst. 13.1900. Therefore, on this record, the State failed to present the court with any evidence supporting its request that Jones testify virtually.

But even if those representations had been supported by evidence, the State failed to demonstrate that requiring Jones to testify in person would have caused a concrete or substantial harm. To be sure, securing Jones's in-person attendance may have been inconvenient or costly. But, as explained above, mere inconvenience or expense, standing alone, do not constitute the types of harm that public policy deems important enough to justify permitting a witness to testify remotely against a criminal defendant. *See Newson*, 526 P.3d at 722; *Rogerson*, 855 N.W.2d at 507. That is especially true here, as the State offered no evidence or explanation of what specific resources were lacking, why those limitations existed, or how they rendered in-person testimony impracticable in this case. Only at oral argument did the State suggest, for example, that transporting an incarcerated witness from a penal facility poses safety risks in the absence of adequately trained officers. But this assertion was never presented to the trial court. And even if it had been, the identified risk, standing alone, doesn't explain why transporting Jones in particular would have posed a concrete or substantial danger.

That said, we recognize that counties vary in their available resources, and some may have difficulty securing the equipment or personnel needed to safely transport an incarcerated witness over a long distance on short notice. But that recognition must be weighed against the fact that the State—not the county—initiates criminal prosecutions and confines individuals in penal facilities. And this record simply "does not reflect that the State made much of an effort at all to gain" Jones's attendance. *Garner v. State*, 777 N.E.2d 721, 725 (Ind. 2002). For example, although the

State remarked that it had filed a transport order a week before trial, it took no apparent steps to enforce that order through a subpoena or to otherwise compel Jones's presence. *See* Ind. Code § 35-37-5-3. Because the State failed to exhaust available means to secure Jones's in-person testimony, we cannot conclude that his virtual testimony was necessary rather than merely convenient. Holding otherwise would effectively allow the State to rely on generalized resource constraints to justify remote testimony whenever an incarcerated witness must be transported to a criminal trial. Interim Rule 14(C) demands more.

All in all, the State did not carry its burden of showing good cause because it failed to present case-specific evidence that requiring Jones to testify in person would likely have caused a concrete and substantial harm and that permitting him to testify virtually was necessary to avert that harm. And because of that failure, the trial court abused its discretion by permitting Jones to testify virtually. We now turn to whether that error was harmless.

## II. The error in permitting Jones to testify virtually was harmless.

Although Interim Rule 14(C) is informed by constitutional guarantees, a violation of that rule does not automatically require review under the harmless-beyond-a-reasonable-doubt standard. That standard applies only to properly preserved constitutional claims. And here, as explained above, Shabazz waived his constitutional challenges. Accordingly, the only issue before us is the alleged misapplication of Interim Rule 14(C). And because we've concluded the trial court erred in applying the rule, we assess whether that error was harmless by applying Appellate Rule 66(A)'s probable impact test. *See Hayko v. State*, 211 N.E.3d 483, 491–92 (Ind. 2023); *B.N.*, 199 N.E.3d at 365.

Under that test, Shabazz "bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below." *Hayko*, 211 N.E.3d at 492. In conducting this review, we consider the likely impact

of Jones's improperly admitted testimony "on a reasonable, average jury." *Id.*

Shabazz contends that Jones's testimony was not harmless because the case involved "so many moving parts," making it "difficult to believe" the testimony "was not a major factor in the jury's decision." While we agree that this case had many moving parts, the record does not support a conclusion that Jones's testimony affected the verdict in a way that undermines our confidence in it.

Jones testified that while he was in jail, Shabazz admitted he had killed Tiffany. He further testified that Shabazz threatened to have him "hurt or killed" if he "didn't change [his] story." On cross-examination, however, Jones acknowledged that he had contacted the State while incarcerated and offered to testify against Shabazz only in exchange for release on home detention—a benefit he ultimately received. Though this latter testimony plainly called Jones's credibility into question, we recognize that his initial testimony viewed in isolation was quite incriminating. Still, we must assess its impact in light of all the evidence before the jury.

And the State presented overwhelming independent evidence that Shabazz acted with another to kill Tiffany. Terry provided an eye-witness account of the events, testifying that Shabazz kicked Tiffany, picked her up and slammed her down, and helped carry her into the bathroom to "finish her off." Dustin testified that Shabazz told him he'd killed Tiffany and threatened Dustin to "keep [his] mouth shut." Shabazz himself admitted to being present during the beating and to helping carry Tiffany into the bathroom. The State introduced forensic evidence showing that Shabazz's shoes were stained with blood containing Tiffany's DNA. And the State admitted into evidence a note Shabazz sent to Terry urging him to "keep it solid," and stating, in reference to Ariona's death, that "we got a scapegoat on this case!"

Against this evidentiary backdrop, Jones's testimony was, at most, cumulative. And the jury had multiple independent, corroborating bases to reasonably conclude that Shabazz was an accomplice to Tiffany's murder. Accordingly, Shabazz has failed to show that the probable impact of the trial court's error—considered in light of all the evidence—

undermines our confidence in the verdict. The error was therefore harmless.

## Conclusion

The State did not carry its burden of showing good cause under Interim Rule 14(C). We therefore hold that the trial court abused its discretion by permitting the witness to testify virtually. But because we hold that the error was harmless, we affirm.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Jodi Kathryn Stein
Deputy Attorneys General
Indianapolis, Indiana